| | | |
|---|---|---|
| **THOMAS DWYER** | : | **Case No. 1:17-cv-00455-MRB** |
| | : | |
| **Individually and on behalf of all others similarly situated** | : | **Judge Michael R. Barrett** |
| | : | |
| **Plaintiff,** | : | **MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | : | |
| **vs.** | : | |
| | : | |
| **SNAP FITNESS, INC.** | : | |
| | : | |
| **Defendant.** | : | |

Plaintiff Thomas Dwyer("Dwyer" or "Named Plaintiff"), on behalf of himself and the

Settlement Class, respectfully moves this Court to enter the proposed Order Granting

Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"),[1] attached

hereto as Exhibit 1. The Preliminary Approval Order is sought for a settlement that was reached

after hard-fought litigation, was the result of arm's-length negotiations, including a multi-month

mediation with William Hawkins of Baker Hostetler, and should be granted for these and other

reasons as more fully set forth in the accompanying memorandum of law.

Respectfully submitted,

/s/ Bryce Lenox
Bryce A. Lenox (0069936)
THE LAW OFFICE OF BRYCE A. LENOX, ESQ.
LLC
3825 Edwards Road, Suite 103
Cincinnati, Ohio 45208
(513) 520-9829
bryce@brycelenoxlaw.com

---

[1] Capitalized terms not defined herein are as stated in the Settlement Agreement and Release dated February 1, 2019, attached as Exhibit 2.

/s/ Brian T. Giles

Brian T. Giles (0072806)
THE LAW OFFICE OF BRIAN T. GILES LLC
1470 Apple Hill Rd.
Cincinnati, Ohio 45230
(513) 379-2715
Brian@GilesFirm.com

Attorneys for Plaintiff

**MEMORANDUM IN SUPPORT**

Pursuant to Fed. R. Civ. P. 23(e), Thomas Dwyer, on behalf of himself and the Settlement Class, respectfully moves this Court to enter the proposed Preliminary Approval Order.

## I.       PRELIMINARY STATEMENT

Dwyer has reached an agreement with Snap Fitness, Inc. ("Defendant" or "Snap Fitness") to settle this class action on the terms set forth in the Settlement Agreement. The proposed Settlement will provide a substantial benefit to the Settlement Class: over $2.9 million dollars to be distributed among approximately 141,000 class members. The Settlement, if approved, will resolve all claims asserted against Snap Fitness in this class action.

The proposed Settlement was reached at a time when the Parties to the Settlement Agreement understood the strengths and weaknesses of their respective positions. Specifically, Dwyer, through his counsel, conducted an extensive investigation of his claims, filed an original complaint, moved for leave to file an amended complaint, replied to Snap Fitness's opposition to the motion for leave, and undertook significant fact discovery.

Dwyer and Snap Fitness engaged in extensive arm's-length settlement negotiations and participated in an extensive mediation under the supervision of William Hawkins of Baker Hostetler. The mediation extended for nearly two months, and ultimately resulted in the Agreement. Dwyer, based upon his evaluation of the facts and applicable law and his recognition of the substantial risk and expense of continued litigation, submits that the proposed Settlement is in the best interests of the Class and will provide an immediate meaningful recovery.

Prior to the Fairness Hearing, Dwyer will submit detailed papers supporting the proposed Settlement and will ask the Court to determine whether the proposed Settlement is fair, reasonable, and adequate. At this time, however, Dwyer requests only that the Court grant

3

preliminary approval of the proposed Settlement so that notice may be provided to the Class.

Specifically, Dwyer requests that the Court enter the proposed Order Granting Preliminary Approval of Class Action Settlement, submitted herewith, which, among other things, will:

  a. conditionally certify the Class for settlement purposes only and appoint Class Counsel as counsel for the Class for settlement purposes only;

  b. preliminarily approve the Settlement and this Agreement as fair, adequate, and reasonable, and within the reasonable range of possible final approval;

  c. appoint the firm of JND Legal Administration to administer the notice procedure and the distribution of Cash Awards;

  d. approve the form of Class Notice and find that the notice program set forth herein both constitutes the best notice practicable under the circumstances and satisfies due process, Federal Rule of Civil Procedure 23, and all other applicable laws and rules;

  e. set the date and time for the Fairness Hearing, which may be continued by the Court from time to time without the necessity of further notice; and,

  f. set the Objection Deadline and the Opt-Out Deadline for a time no later than twenty-one (21) days before the Fairness Hearing.

Given the substantial benefits available to the Class under the Settlement, and the risks in establishing Snap Fitness's liability and proving damages, Dwyer respectfully submits that the proposed Settlement reflected in the Agreement is not only fair, reasonable, and adequate, but that it represents an outstanding recovery, as further described below.

## II. FACTUAL BACKGROUND

On May 25, 2017, Dwyer filed his Class Action Complaint in the Court of Common Pleas, Hamilton County, Ohio. Dwyer's Class Action Complaint sought remedies for a nationwide class under theories of breach of contract, unjust enrichment for the allegedly improper charge of a "Club Enhancement Fee" in 2017 to Snap Fitness club members nationally. The Complaint also sought remedies for an Ohio subclass under the Ohio Consumer Sales

Practices Act ("CSPA") and Prepaid Entertainment Contracts Act (R.C. 1345.41 to R.C. 1345.50) for an alleged failure to attach or otherwise provide a duplicate, detachable "notice of cancellation" form to contracts of Ohio Snap Fitness club members. On June 30, 2017, Defendant removed the matter to this Court.

On October 26, 2017, Dwyer served interrogatories, requests for production of documents, and requests for admission upon Snap Fitness. While Snap Fitness responded to the written discovery on December 1, 2017, it produced documents on a rolling basis lasting for months, and ultimately produced over 1,000 documents. Class Counsel reviewed and analyzed the documents produced by Snap Fitness and those obtained through its own investigation. Based upon the documents produced by Snap Fitness, on July 12, 2018, Dwyer moved for leave to file an amended complaint to bring class claims under the consumer protection laws in the 40 states in which members were charged a Club Enhancement Fee and claims for fraud. Snap Fitness opposed the motion. While the motion was pending, on September 26, 2018, the Parties engaged in mediation with William Hawkins of Baker Hostetler. After the mediation, the Parties continued to negotiate terms through Mr. Hawkins for nearly two months.

Dwyer and Class Counsel believe the Settlement is fair, adequate, reasonable, and in the best interests of the Class, taking into account the benefits provided to the Class through the terms of the Settlement, the risks of continued litigation and possible trial and appeals, and the length of time and the costs that would be required to complete the litigation. Class Counsel has examined and considered the benefits to be provided to the Class under the Settlement provided for in this Agreement; and considered the laws of the several States and the claims that could be asserted under those laws regarding Snap Fitness's conduct.

## III.   ARGUMENT

### A.   The Proposed Settlement Warrants Preliminary Approval

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Rule 23(e) provides three steps for the approval of a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006).[2]  Dwyer requests that the Court preliminarily approve the proposed Settlement, the first step in the three-step process.

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.662 (2012). Instead, the Court should evaluate only whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009) (citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997)).[3] In essence, the Court must preliminarily determine that the settlement is sufficiently fair, reasonable, and

---

[2] *See also Amos v. PPG Indus.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) (same).

[3] *See also Bautista v. Twin Lakes Farms, Inc.*, No. 104-CV-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating

adequate so that it can "direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing" to all those affected by it. *In re Skechers Toning Shoe Products Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012).[4]

        **1.      The proposed Settlement was reached after serious, informed, and arm's-length negotiations.**

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton*, 141 F. Supp. 2d at 906 (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").[5] Notably, "[t]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008).

In this case, the Settlement was the result of intensive, arm's-length negotiations between experienced attorneys who have extensive class action litigation experience and who have knowledge of the legal and factual issues of this case in particular. The Parties' respective counsel are experienced in litigation of class actions, including certification, trial, and settlement of such cases. There is no evidence that any collusion or illegality existed during the settlement

---

parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.") (internal quotes omitted).

[4] *See also In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-CV-12141-AC-DAS, 2014 WL 8335997, at *3 (E.D. Mich. Oct. 2, 2014) ("The ultimate approval of a class action settlement requires a finding that the settlement is fair, adequate, and reasonable."); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001); *In re Southern Ohio Corr. Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1997).

[5] *See also Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001); 1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 at 90 (4th Ed. 2002).

process. Settlement negotiations in this case took place over the course of multiple mediation sessions over several months and ultimately reached an initial agreement during a session mediated by William Hawkins, an experienced mediator. After the initial agreement was reached, counsel for both Parties spent significant time exchanging, reviewing, and analyzing additional data for the final settlement. This evidence strongly supports the conclusion that the Settlement is fair and reasonable and was reached at arm's length.[6]

> **2.      The proposed Settlement falls within the range of reasonableness and warrants issuance of notice and a hearing on final approval of settlement.**

Although Dwyer believes that the claims asserted in the Class Action are meritorious and the Class would ultimately prevail at trial, continued litigation against Snap Fitness posed significant risks that made any recovery for the Class uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. See *Amos*, 2015 WL 4881459, at *1 ("In general, most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them." (internal citations and quotations omitted)).[7]

Here, if the litigation were to continue, Dwyer would face a number of high-stakes risks before trial that could have limited, or even eliminated, the claims, including a possible limitation on all claims, a potential dismissal for personal jurisdiction of his amended claims, and

---

[6] *See also Amos v. PPG Indus.*, 2015 WL 4881459, at *1 (noting that the Southern District of Ohio "recognizes that the settlement of class action is generally favored and encouraged" (internal citations omitted)).

[7] *See also Brotherton*, 141 F. Supp. 2d at 905 (noting that adding any further delay to an 11-year-old case "would not substantially benefit class members" and would support a finding that the settlement was fair, reasonable, and adequate); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

a motion to dismiss or summary judgment ruling in favor of Snap Fitness. Despite these real and significant risks, Dwyer and the Rule 23 putative Class will receive significant benefits under the Settlement. Snap Fitness will pay a non-reversionary cash sum in the amount of $2,920,000, and each Settlement Class Member will be entitled to receive a Cash Award on the following terms:

(a)     Each Settlement Class Member in the PECA Sub-Class will receive a Cash Award of $5.00.

(b)     Each Settlement Class Member in the CEF Sub-Class will receive a Cash Award in a designated percentage of the Club Enhancement Fees that he or she paid. The Cash Award will be determined for each Settlement Class Member in the CEF Sub-Class as follows:

(i)     first, the total amounts accounted for under Section 4.04(a) will be deducted from the Settlement Fund to calculate the "CEF Net Settlement Fund";

(ii)     next, the CEF Net Settlement Fund will be divided by the total of all Club Enhancement Fees paid by Settlement Class Members to calculate the percentage of recovery to be applied class-wide (the "Percentage of Recovery"). The total of all Club Enhancement Fees cumulatively paid by Settlement Class Members will be derived from Defendant's business records.

(iii)     next, the Percentage of Recovery will be applied to the Amount Paid to calculate the Cash Award for each Settlement Class Member.

(c)     A Settlement Class Member who is a member of both the PECA Sub-Class and the CEF Sub-Class will receive a Cash Award consisting of a combined payment under Section 4.04(a) and Section 4.04(b).

When considering the Settlement, Dwyer weighed the certainty of an immediate recovery for the Settlement Class Members against the significant legal challenges Dwyer and the Class faced. Under these circumstances, the proposed Settlement is fair, reasonable, and adequate.

### 3. The Proposed Settlement Has No Obvious Deficiencies

There are no grounds to doubt the fairness of the proposed settlement or other obvious deficiencies, such as unduly preferred treatment of Dwyer or excessive attorney compensation. *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 271 (E.D. Ky. 2009). Dwyer, like all other Settlement Class Members, will receive his settlement benefit in accordance with a claims process that will be presented to the Court for approval. The matter of attorneys' fees and payment of expenses, as well as any incentive compensation for Dwyer, are wholly separate from the Settlement. Importantly, whatever attorneys' fees, expense reimbursement, and incentive payments are awarded by this Court will not reduce the benefits available to the Class Members.

Accordingly, nothing in the course of this class action, the settlement negotiations, or the Settlement itself raises fairness concerns. Dwyer therefore requests that the Court preliminarily approve the Settlement and set a date for the Fairness Hearing.

### B. Certification of the Proposed Class for Purposes of Settlement Only is Appropriate.

The Supreme Court has recognized that at times the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. See *Amchem Prods. v. Windsor*, 521 U.S 591, 620 (1997). Accordingly, Dwyer seeks the conditional certification of the Settlement Class set forth above and in the Agreement.

"For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b)." *Pelzer v. Vassalle*, 655 F. App'x 352, 363 (6th Cir. 2016). The four requirements of Federal Rule of Civil Procedure 23(a) are numerosity, commonality, typicality, and adequacy. Furthermore, Dwyer seeks certification of the Settlement Class pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court

finds the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

As discussed below, these requirements are met for purposes of settlement in this case.

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no magic number needed to satisfy numerosity; in the Sixth Circuit, numerosity has been satisfied with a class of 35. *See In re Am. Med. Sys. Inc.,* 75 F.3d 1069, 1076 (6th Cir. 1996) ("the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement" (internal quotation marks omitted)); *see also Daffin v. Ford Motor Co*., 458 F.3d 549, 553 (6th Cir. 2006) ("substantial" numbers satisfy, and thousands are "substantial"). Here, the total number of Class Members is well over 100,000. Numerosity is therefore readily satisfied. *See In re Whirlpool Corp. Front-loading Washer Prod. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *7 (N.D. Ohio Sept. 23, 2016) (with millions of class members, joinder is not "simply impractical, it is impossible").

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Both the majority and

dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.

In this case, there are numerous common questions of law and fact, such as whether Snap Fitness has a common policy or practice of improperly charging through its franchisees a Club Enhancement Fee to its members' accounts; whether Snap Fitness had a common policy or practice of failing to provide through its franchisees a duplicate, detachable "notice of cancellation" to its Ohio club members; and whether the Class Members have actionable claims. Commonality is, therefore, satisfied. *See In re Whirlpool Corp.*, 722 F. 3d at 855 (commonality satisfied because "the evidence confirms that the issues regarding alleged design flaws are common to the class"); *see also Daffin v. Ford Motor Co.*, No. C-1-00- 458, 2004 WL 5705647, at *2 (S.D. Ohio July 15, 2004), aff'd, 458 F.3d 549 (6th Cir. 2008).

### 3. Typicality

In order to satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*; see also *Am. Med. Sys.*, 75 F.3d at 1082 (same). Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the class members represented.

Here, all of Dwyer's claims arise out of the same alleged conduct by Snap Fitness related to its practices and policies regarding a charge of a Club Enhancement Fee to its members and its

policies relating to notice of cancellations for Ohio customers, and the same legal theories apply to all. Typicality is satisfied.

### 4. Adequacy of Representation.

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria: 1) the "representative must have common interests with unnamed members of the class," and 2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

Here, Dwyer is an adequate representative because during the Class Period he was charged a Club Enhancement Fee by Snap Fitness and did not receive a separate and detachable notice of cancellation form, both of which are covered by the Settlement. He has also actively participated in the litigation of this case, including personal attendance at the first day of mediation.

In addition, Dwyer's counsel is qualified. The Agreement designates The Law Office of Bryce A. Lenox, Esq. LLC and The Law Office of Brian T. Giles LLC as Class Counsel. These firms have invested considerable time and resources into the prosecution of this action, both through their former firm Giles Lenox, and now through their individual firms. Class Counsel possess a wealth of experience litigating complex class action lawsuits, and were able to negotiate an outstanding settlement for the Class Members. (See Lenox Decl. ¶¶ 2-4, 6-8 (Exhibit 3); Giles Declaration ¶¶ 2-4, 6-8 (Exhibit 4). Based on the results achieved here, the Court should appoint The Law Office of Bryce A. Lenox, Esq. LLC and The Law Office of Brian T. Giles LLC as Class Counsel, and determine that Rule 23(a)'s adequacy requirement is satisfied.

### 5. Rule 23(b)(3) Requirements

Dwyer seeks to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *7 (W.D. Ky. Dec. 22, 2009) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (6th Cir. 1996)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. See *Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

With respect to predominance, the Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp.*, 722 F.3d at 860. With respect to superiority, the Court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

and (iv) the likely difficulties in managing a class action. *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1063479, at *2 (S.D. Ohio Mar. 17, 2017) (citing Fed. R. Civ. P. 23(b)(3)).

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Settlement Class Members. For example, were this case to proceed, the primary issue would be whether Snap Fitness improperly charged a Club Enhancement Fee to members nationwide and failed to provide a duplicate, detachable "notice of cancellation" form to Ohio class members, and whether Snap Fitness is liable for these actions. This is an issue subject to "generalized proof," and is a "question that is common to all class members." See *Daffin*, 2004 WL 5705647, at *2; see also *In re Countrywide*, 2009 WL 5184352, at *6 ("the proof required [must focus] on Defendant's conduct, not on the conduct of the individual class members"). Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) — that a class action is superior to other available methods for the fair and efficient adjudication of the controversy — is also readily satisfied. See Fed. R. Civ. P. 23(b)(3). The Agreement provides members of the Settlement Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Member who is dissatisfied with the settlement to object to it or to request exclusion from the Class. The settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudications in individual trials against Snap Fitness. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." (internal quotations omitted)). Here, individual trials for small amounts of damages are not feasible; the proposed class action remedy is superior.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Class is appropriate.

C.    **The Proposed Class Representative, Class Counsel, and Settlement Administrator Should be Approved.**

Class Plaintiff Thomas Dwyer seeks to be appointed as class representative for the Settlement Class. Dwyer has been intimately involved in the prosecution of this case since its outset. Dwyer has cooperated with counsel, assisted in the preparation of the Complaint, provided documentation of the charge of the Club Enhancement Fee, and responded to Defendant's requests for production and interrogatories. Lenox Decl. ¶ 5; Giles Decl. ¶ 5. Dwyer was a Snap Fitness member and was charged a Club Enhancement Fee during the Class Period. *Id*. When Dwyer joined Snap Fitness, he was not provided a duplicate, detachable notice of cancellation form. *Id*.  Dwyer's claims are typical of the claims of the Settlement Class, and he will fairly and adequately protect the interests of the Settlement Class.

For the reasons previously discussed with respect to adequacy of representation, The Law Office of Bryce A. Lenox, Esq. LLC and The Law Office of Brian T. Giles LLC should be designated as Class Counsel.

The proposed Class Counsel, with the approval of Snap Fitness, propose that JND Legal Administration act as Settlement Administrator. JND Legal Administration and its principals have a long history of successful settlement administrations in class actions. Lenox Decl.¶ 9; see also Keough Decl., at ¶¶ 2, 6-10  (Exhibit 5).

D.    **The Proposed Form and Manner of Notice to the Class is Reasonable and Should be Approved**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P.

23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732 (1974). In order to satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide*, 2009 WL 5184352, at *43 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The Notice Plan set forth in the Agreement provides the best notice practicable under the circumstances. The Parties negotiated the form of Class Notice to be disseminated to all persons who fall within the definition of the Class and whose names, addresses and email addresses can be identified with reasonable effort from or through Snap Fitness's records. Notice will be provided as follows: (i) the Email Notice sent via electronic mail to the most recent email address as reflected in Defendant's reasonably available computerized account records, to all persons in the Settlement Class for whom such records exist; or (ii) the Postcard Notice sent via first class mail to the most recent mailing address as reflected in Defendant's computerized account records, for those persons in the Settlement Class for whom Defendant does not have an email address (as reflected in reasonably available computerized account records), and to those persons in the Settlement Class whose emails are undeliverable, as determined by the Claims Administrator. In addition, a Long-Form Notice will be posted on the Settlement website operated by the Claims Administrator. The various forms of Class Notice are attached as Exhibit A-1 (Email Notice), Exhibit A-2 (Postcard Notice), and Exhibit A-3 (Long-Form Notice) to the Settlement Agreement.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a

reasonable manner."[8]  Here, the proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Class Counsel will apply to the Court for attorneys' fees, Litigation Expenses, and a Class Representative Award of no more than $350,000 that will be paid separate and apart from the Settlement Fund.  That equates to 11.9% of the settlement fund. This proposed fee amount is well within the range of reasonable attorneys' fees awarded for similar class action matters in the Sixth Circuit as well as other federal district courts.[9]  In fact, in *NorCal Tea Party Patriots v. IRS*, No. 1:13cv341 (S.D. Ohio August 17, 2018), this Court awarded 50% of the settlement fund as reasonable attorneys' fees.

The proposed Notice Plan complies with Fed. R. Civ. P. 23 and due process because, among other things, it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Settlement Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if the Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Class Members may make an appearance through counsel; (5) information regarding Dwyer's request for an incentive award and the payment by Snap Fitness of attorneys' fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

---

[8] Fed. R. Civ. P. 23(h)(1).

[9] See, e.g., *In re Cincinnati Gas & Electric Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) ("typically the percentages range from 20% - 50%"); *Palombraro v. Emery Federal Credit Union*, 1:15cv792, (S.D. Ohio October 25, 2018) (Dlott) (30% of settlement fund awarded with an 1.8 times multiplier); *Arledge v. Dominoes Pizza*, No. 3:16-cv-386 (S.D. Ohio October 17, 2018) (Rice) (22.6% of total benefit, or 29.4% of the amount to the class awarded, with 2.57 multiplier); *Dillow v. Home Care Network*, No. 1:16cv612 (S.D. Ohio October 3, 2018) (Black) (24% of total benefit, or 33% of amount to class, with 2.9 multiplier awarded); *Wright v. Premiere Courier*, No. 2:16cv420 (S.D. Ohio  August 17, 2018) (Watson) (33% of total fund awarded as attonrey's fees); *Rikos v. Proctor & Gamble*, 1:11cv226, (S. D. Ohio April 13, 2018) (Black) (20.4% of settlement fund awarded); *Kimber Baldwin Designs v. Silv Communications*, No. 1:16cv448 (S.D. Ohio November 13, 2017) (33% of settlement fund awarded); *Owner Operator Independent Driving Assn. v. Arctic Express*, No. 97cv-750 (S.D. Ohio Sept. 21, 2016) (King) (33% of fund awarded); *Freiertag v. DDP Holdings*, No. 14-CV-2643 (S.D. Ohio September 9, 2016) (Marbley ) (30% of fund awarded).

Accordingly, the notice plan and Settlement Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of providing notice, which includes individual notice by either email or mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004).[10]Thus, the notice plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

**E.      The Court should provide a schedule leading up to a Fairness Hearing.**

Dwyer requests that the Court set a schedule, leading up to a Fairness Hearing, that would include, inter alia, deadlines for notice to Class Members, for Class Members to object to the Settlement, to opt out of the Settlement, and to make claims under the Settlement, and deadlines for the filing of papers in support of final approval and in support of attorneys' fees, Litigation Expenses, and a Class Representative Award. A proposed schedule is attached as Exhibit 6.  At the Fairness Hearing, the Court may hear all evidence and argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may offer argument in support of final approval. In addition, Class Members who have properly objected to the Settlement may be heard at this hearing. The Court will determine through the Fairness Hearing whether the Settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

---

[10] Fed. R. Civ. P. 23(e)(2).

## IV.    CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Thomas Dwyer

respectfully requests that the Court grant preliminary approval and enter the proposed

Preliminary Approval Order attached as Exhibit 1.

Respectfully submitted,

/s/ Bryce Lenox
Bryce A. Lenox (0069936)
THE LAW OFFICE OF BRYCE A. LENOX, ESQ.
LLC
3825 Edwards Road, Suite 103
Cincinnati, Ohio 45208
(513) 520-9829
bryce@brycelenoxlaw.com

/s/ Brian T. Giles
Brian T. Giles (0072806)
THE LAW OFFICE OF BRIAN T. GILES LLC
1470 Apple Hill Rd.
Cincinnati, Ohio 45230
(513) 379-2715
Brian@GilesFirm.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on March 1, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on CM/ECF.

/s/ Bryce A. Lenox
Bryce A. Lenox
